## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

ERNEST JAMES YOUNG, through
Surviving Souse MICHELLE YOUNG;
and Daughter and Heir, AMANDA FRIES,

*Plaintiffs,*

vs.                                                           Case No. 22-280-EFM

KERR-McGEE CORP.,
a Delaware Corporation, *et al.*,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiffs Michelle Young and Amanda Fries allege that Ernest James Young (respectively, their husband and father) died as the result of his exposure to toxins released from the uranium processing plant in Gore, Oklahoma. Plaintiffs bring this claim for wrongful death against seven corporations they tie, in one manner or another, to that processing plant. Defendants Kerr-McGee, Anadarko Petroleum, and Occidental Petroleum have moved to dismiss for a lack of personal jurisdiction. (Doc. 38). The remaining Defendants have filed separate Motions to Dismiss (Doc. 40, 41, 42, 46) which raise a variety of issues. By the present Order, the Court grants the Motions to Dismiss of Kerr-McGee, Anadarko, Occidental, General Atomics and Sequoyah Holdings. The remaining Motions (Doc. 40, 42) are granted in part and denied in part.

## I.        Factual and Procedural Background[1]

Ernest Young died on April 9, 2020, as a result of Defendants' acts and omissions. Amanda Fries is the daughter and heir of decedent Ernest James Young.  This action is prosecuted by and through Young's surviving spouse and daughter.

Mr. Young lived in Gore, Oklahoma for approximately the first 22 years of his life, and during this timeframe he was exposed to uranium, uranium-containing contaminates, and other toxic substances. In approximately August of 2018, Mr. Young was diagnosed with the pancreatic cancer which caused his death in 2020.

All Defendants are Delaware Corporations except General Atomics, which is a California Corporation

The present litigation arises from events at the Sequoyah Fuels Nuclear Plant near Gore, Oklahoma, close to the Illinois River, the Arkansas River, and Interstate 40.  This uranium processing facility opened in 1970, and was owned by Kerr-McGee Nuclear Corporation until 1983.

Kerr-McGee Nuclear Corp. was then a subsidiary of what is known as "Old" Kerr-McGee Corporation, an entity formed in 1929.  Plaintiffs allege that Old Kerr-McGee Corp. "was succeeded by" Kerr-McGee Operating Corporation, which later became Tronox Worldwide LLC "[t]hrough a series of mergers and name changes" in 2005. Plaintiffs allege that "New" Kerr-McGee Corporation came into existence in the early 2000s as a spinoff from Old Kerr-McGee.

---

[1] The facts are taken from Plaintiffs' Complaint and are considered true for purposes of this Order.

Plaintiffs allege that in 1983, Kerr-McGee Nuclear Corp. created a wholly owned subsidiary, Sequoyah Fuels Corporation, which then took control of the Plant. That same year, Kerr-McGee Nuclear Corporation changed its name to Quivira Mining Company.

In 1988 General Atomics bought Sequoyah Fuels, and at about the same time created Sequoyah Holding Corporation, while Rio Algom Mining Corporation bought Quivira Mining.

Plaintiffs generally allege the Defendant corporate entities are mutually liable for what occurred at the Plant:

28.   The personalities and assets of Kerr-McGee Nuclear Corporation and (Old) Kerr-McGee Corp., were so indistinct that adherence to the corporate fictions will defeat public convenience, justify wrong, or protect fraud. Thus, Kerr-McGee Nuclear Corp. was the mere instrumentality or alter ego of its parent corporation, Old Kerr-McGee.

29.   Upon information and belief, there is a lack of distinction between (Old) Kerr-McGee and (New) Kerr-McGee, Anadarko Petroleum Corporation, and Occidental Petroleum Corporation. Thus, these corporations are ultimately the mere instrumentalities or alter egos of their predecessors.

30.   Upon information and belief, the funds and assets of some or all of the Defendants named in paragraph 29 are commingled.

31.   The principals of equity require that (new) Kerr-McGee, Anadarko, and Occidental be held jointly and severally liable to the debts and liabilities stemming from one another.

The Plant worked to turn crushed uranium ore into the fine powder used for nuclear reactors fuel rods, as well as making the uranium used for armor-piercing bullets and shells. Plaintiffs allege that similar plants "have been known to produce dangerous concentrations of toxic gases," and that the named Defendants mishandled and released hazardous and toxic contaminants at the Plant, which then migrated beyond the Plant through groundwater and the air. In particular, Plaintiffs allege that a January 4, 1986 chemical leak and explosion killed one Plant worker, and injured 130 others, as well as causing extreme groundwater and soil

contamination across the 600-acre site.  Plaintiffs allege Plant workers were poorly trained and their equipment poorly maintained.  The Plant was decommissioned in 1993.

The Amended Complaint further alleges that Mr. Young was born on July 17, 1962, and by living in proximity to the Plant for two decades, he was for a long time exposed to its contamination of the nearby water and soil.  Plaintiffs allege that Mr. Young's death from pancreatic cancer on April 9, 2020, when he was 57 years of age, was caused by that exposure.

The Amended Complaint brings claims for both negligence (under "the common law as well as relevant Federal and Oklahoma statutes, and relevant Federal and Oklahoma environmental statutes and regulations — including the Price-Anderson Act") and strict liability. As to both claims, Plaintiffs allege that Defendants Sequoyah Fuels, Sequoyah Holding, General Atomics, and Quivira Mining are directly liable, while Defendants Kerr-McGee, Anadarko, and Occidental are liable as the mere instrumentality/alter-ego of Old Kerr-McGee.

## II.    Legal Standard

Under Rule 12(b)(2), a defendant may move for dismissal if the court lacks personal jurisdiction over him.[2]  However, "if a party fails to assert the defense of lack of personal jurisdiction in his answer or pre-answer motion, he waives the defense."[3]  "A personal defense may not be raised by another on behalf of a party."[4]  A defendant may explicitly consent to the

---

[2] Fed. R. Civ. P. 12(b)(2).

[3] *ORI, Inc. v. Lanewala*, 147 F. Supp. 2d 1069, 1074 (D. Kan. 2001) (citing *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174-75 (10th Cir. 1992)); *see also* Fed. R. Civ. P. 12(h)(1)

[4] *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986).

court's jurisdiction.[5]   Alternatively, a defendant may implicitly consent to the court's jurisdiction by voluntarily appearing before the court and participating in the proceedings.[6]

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[7]   Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[8]   A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[9]   The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[10]   Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[11]   Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[12]   If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much

---

[5] *Butler v. Daimler Trucks N. Am., LLC*, 433 F. Supp. 3d 1216, 1235 (D. Kan. 2020) (citing *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 766 (Fed. Cir. 2016)).

[6] *Id.*

[7] Fed. R. Civ. P. 12(b)(6).

[8] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[10] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[11] *Iqbal*, 556 U.S. at 678-79.

[12] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[13]

### III.    Analysis

**A.    The Court lacks personal jurisdiction over Anadarko, Occidental and Kerr-McGee.**

For the Court to exercise personal jurisdiction over a nonresident Defendant in this diversity action, Plaintiffs' well-pled allegations must show that the Defendant has "minimum contacts" with Oklahoma such that maintaining the suit here conforms with "traditional notions of fair play and substantial justice."[14]   "Minimum contacts" may take either a "general" (suit-unrelated) or "specific" (suit-related) form.   The former requires Plaintiffs to show a Defendant maintained "general business contacts" with Oklahoma so "continuous and systematic" as to make it "essentially at home" in Oklahoma.[15]   The latter, specific personal jurisdiction, exists if the alleged injury to Plaintiffs "arise[s] out of or relate[s] to" activities that a Defendant "purposefully directed" at Oklahoma.[16]

Defendants Kerr-McGee, Anadarko, and Occidental argue that the Court lacks either general jurisdiction or specific jurisdiction.   They contend that the principle place of business of each of the companies is Texas, and that they do no business in Oklahoma.   Further, they argue that they simply could not have engaged in conduct giving rise to the alleged injuries, as the new Kerr-McGee only came into existence in the early 2000s following a complicated devolution of

---

[13] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[14] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[15] *Old Rep. Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903-04 (10th Cir. 2017) (quotations omitted).

[16] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

the related "old" Kerr-McGee entities, long after the events giving rise to the present cause of action, and Occidental and Anadarko entered the picture even later.

In their Response, Plaintiffs make no attempt to show that these three Defendants have engaged in business generally in Oklahoma so as to render them subject to the Court's jurisdiction here.  Neither do Plaintiffs make any effort to show that these particular defendants are subject to specific jurisdiction, by virtue of engaging in specific acts in Oklahoma giving rise to the cause of action.  Instead, Plaintiffs' only argument is that these corporations are the "alter egos" of other Defendants, who do have some history of activities in Oklahoma.

The problem, however, is that Plaintiffs' allegations, set out earlier, are purely and utterly conclusory.  Plaintiffs make no attempt at all in the Amended Complaint to disentangle the exact nature of the corporations in question, which came into existence in the bankruptcy and dissolution of old Kerr-McGee in the early 2000s.  Instead, Plaintiffs simply apply the conclusory label that all Defendants acted other and acted as the alter egos of each other.  The Amended Complaint advances no specific facts which would render these claims plausible.

Under Oklahoma law, "[i]f one corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and treated as one for the purpose of tort law."[17]   The issue "hinges primarily on control,"[18] and courts will consider factors including:

> whether 1) the parent corporation owns all or most of the subsidiary's stock, 2) the corporations have common directors or officers, 3) the parent provides financing to its subsidiary, 4) the dominant corporation subscribes to all the other's stock, 5) the subordinate corporation is grossly undercapitalized, 6) the parent pays the

---

[17] *Oliver v. Farmers Ins. Group of Cos.*, 941 P.2d 985, 987 (Okla. 1997) (citations omitted).

[18] *Id.*

salaries, expenses or losses of the subsidiary, 7) almost all of the subsidiary's business is with the parent or the assets of the former were conveyed from the latter, 8) the parent refers to its subsidiary as a division or department, 9) the subsidiary's officers or directors follow directions from the parent corporation and 10) legal formalities for keeping the entities separate and independent are observed.[19]

The Amended Complaint provides *no* factual allegations as to any of these relevant factors. Belatedly, in their Response to the Motion to Dismiss, Plaintiffs repeats some of the corporate history of the Kerr-McGee dissolution and spinoffs in approximately 2005, as reported in two bankruptcy decisions reported many years later.[20]

But the cited decisions did not attempt to resolve issues of alter ego liability under Oklahoma law, and in any event reflect the assertions of Plaintiffs' counsel in their response. There remain no allegations *in the Amended Complaint* which would support a finding that the new Kerr-McGee, Occidental or Anadarko controlled the remaining Defendants who do have ties to Oklahoma. More particularly, to the extent the cited cases do discuss the complicated history of the corporate spinoffs of the mid 2000s, there is absolutely nothing to indicate these three Defendants were in fact the alter ego of the remaining Defendants at the two relevant time periods: either during the operation of the Plant prior to 1984 (when Mr. Young last resided in the area of the Plant) or at the present time. Specific allegations as to the relevant factors during these time periods are entirely absent.

"Courts, including the Tenth Circuit, have recognized that the existence of alter ego liability may permit a court to exercise personal jurisdiction over a nonresident individual

---

[19] *Frazier v. Bryan Mem. Hosp. Auth.*, 775 P.2d 281, 288 (Okla. 1989).

[20] *See In re Tronox*, 503 B.R. 239 (S.D.N.Y. 2013); *In re Tronox*, 855 F.3d 84 (2d Cir. 2017).

defendant."[21]   However, "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim.  Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each."[22]   The Amended Complaint fails to allege facts plausibly showing that Anadarko, Occidental, or new Kerr-McGee was the alter-ego of the other Defendants either at the time that Mr. Young was exposed, or at the present time.  Accordingly the Court will grant the Motion to Dismiss by these Defendants.

**B.  The Court deems the present action to be a Price-Anderson public liability action.**

The remaining Defendants present a variety of arguments, but all are united in contending that Plaintiffs' state law claims are preempted by the federal Price-Anderson Act.[23]   Congress may preempt state laws (1) by an express preemption provision, (2) by inference, through so regulating an entire field that by "a framework of regulation so pervasive that Congress left no room for the States to supplement it,"[24] or (3) due to a conflict between state and federal laws, "where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[25]

---

[21] *Factory Direct, Inc., v. Anatomic Global, Inc*.,  2012 WL 13024063, at *4 (W.D. Okla. 2012) (citations omitted).

[22] *Cox v. CoinMarketCap OpCo, LLC*, 2023 WL 1929551, at *13 (D. Ariz. 2023) (quotation and citation omitted). *See also Quality Int'l Packaging, Ltd. v. Chamilia Inc*., 2015 WL 4749156, at *9 n.8 (D.N.J. 2015). ("Plaintiff bears the burden on a 12(b)(2) motion to establish personal jurisdiction through alter ego and agency with competent evidence . . . . ") (emphasis omitted, citations omitted).

[23] 42 U.S.C. §. 2210, *et seq.*

[24] *Arizona v. United States*, 567 U.S. 387, 399 (2012) (further citation, quotations, and ellipses omitted)..

[25] *English v. Gen. Elec. Co*., 496 U.S. 72, 79 (1990) (citations and quotations omitted).

Congress adopted the Price-Anderson Act to encourage civil companies to help develop nuclear energy in the United States.[26]  In 1988, Congress substantially amended the Act, "in an effort to smooth and speed the recovery process for victims after witnessing the aftermath of the Three Mile Island incident, which resulted in a fair amount of litigation chaos."[27]

Under the Act, as amended, a "public liability action" is "any suit asserting public liability."[28]  A "public liability" includes "any legal liability arising out of or resulting from a nuclear incident."[29]  And a "nuclear incident" is defined as:

> any occurrence . . . within the United States causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other properties of source, special nuclear, or byproduct material . . . .[30]

Such public liability actions are deemed to arise under federal law,[31] and may be filed in or removed to federal court.[32]  The Price-Anderson Act limits the amount of liability for defendants, and provides that the government will underwrite some of the amount recovered.[33]  But while the federal public liability action provides the forum for relief, the Act stipulates that "the substantive rules for decision in such action shall be derived from the law of the State in

---

[26] *Duke Power Co. v. Carolina Env'tl Study Grp., Inc.*, 438 U.S. 59, 64-65 (1975).

[27] *Cook v. Rockwell Intern. Corp. (Cook II)*, 790 F.3d 1088, 1096 (10th Cir. 2015).

[28] 42 U.S.C. § 2014(hh)

[29] 42 U.S.C. § 2014(w).

[30] 42 U.S.C. § 2014(q).

[31] 42 U.S.C. § 2014(hh).

[32] 42 U.S.C. § 2210(n)(2).

[33] 42 U.S.C. § 2210((c)-(e).

which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section."[34]

The Supreme Court has observed that the Act "resembles what we have spoken of as 'complete preemption doctrine,' under which the 'pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim . . . .' ''[35]

But while the Act *resembles* complete preemption in some respects, it is clear that the Act does not render state law automatically irrelevant. The Tenth Circuit has recognized that, in contrast to complete preemption of state law, "the Act provides a federal forum for cases asserting liability arising out of a nuclear incident," but "also does much to preserve state rules of decision."[36] That is, if an action does allege the existence of a nuclear incident, "the state law claims cannot stand as separate causes of action."[37] The injured party "can sue under the Price–Anderson Act, as amended, or not at all," and "[h]is federal claim will be derived from state law . . . to the extent it is not inconsistent with federal law."[38]

In *Silkwood v. Kerr-McGee Corp.*,[39] the Supreme Court held that that in the Price-Anderson Act, "Congress' decision to prohibit the states from regulating the safety aspects of nuclear development" did nothing to undermine the "ample evidence that Congress had no

---

[34] 42 U.S.C. § 2014(hh).

[35] *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 485, n. 6 (citations omitted).

[36] *Cook II*, 790 F.3d at 1097 (10th Cir. 2015) (citing *Neztsosie*, 526 U.S. at 485 n. 6).

[37] *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997).

[38] *Id*.

[39] 464 U.S. 249 (1984).

intention of forbidding the states from providing [traditional tort] remedies."[40]   Although *Silkwood* was decided prior to the 1988 Amendments to the Act, the Tenth Circuit has subsequently reiterated its finding that field preemption did not exist, observing that " Congress has authorized the federal government alone to promulgate before-the-fact nuclear safety regulations but—at the same time—has done little to forbid states from indirectly regulating nuclear safety through the operation of traditional after-the-fact tort law remedies."[41]

The operative provision of the Price-Anderson Act, 42 U.S.C. § 2210, "itself contains no federal safety standards that could provide the standard of care in a PAA action."[42]   In the Tenth Circuit, to be protected by conflict preemption, defendants in a Price-Anderson action must show specific "federal statutes, regulations, or other binding safety standards that controlled their conduct" regarding nuclear safety, and demonstrate how these are in conflict with "the particular standards of care applicable to a state law trespass or nuisance claim."[43]

The Court deems the Amended Complaint as bringing a public liability action under the Price-Anderson Act.

**C.  Plaintiffs' state law claims of strict liability are dismissed.**

In responding to Defendant's Motions to Dismiss, Plaintiffs contend that their claims for negligence and strict liability under Oklahoma law are consistent with the Price-Anderson Act. With respect to their strict liability claims, the court finds little to support the argument.

---

[40] *Id.* at 250-51.

[41] *Cook II*, 790 F.3d at 1098 (citing *Cook v. Rockwell Intern. Corp.* (*Cook I*), 618 F.3d 1127, 1143-44 & n. 17 (10th Cir. 2010)).

[42] *Cook I*, 618 F.3d at 1143.

[43] *Id.* at 1144.

Plaintiffs cite the Supreme Court's decision in *Silkwood v. Kerr-McGee Corp.*[44]   But, as noted earlier, *Silkwood* was decided before the 1988 Amendments to Price-Anderson Act, and the Court conducted no analysis under 42 U.S.C. § 2014(hh) — a provision which did not yet exist — as to whether strict liability in tort might be "inconsistent with the provisions of such section." Accordingly the decision not resolve the potential consistency between state strict liability law and federal law under the 1988 Amendments.[45]

As to that precise issue, the overwhelming weight of authority is that state strict liability actions are superseded by federal law.[46]   Under Oklahoma law, liability may be imposed for injury from hazardous activities without regard to fault or negligence.[47]   By its very nature, the

---

[44] 464 U.S. at 256.

[45] *See Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1503 (10th Cir. 1997) ("While not otherwise superseding the decision in *Silkwood*, the 1988 Amendments can be read in part as a congressional response to the result in *Silkwood*.").

[46] *See City of Metropolis v. Honeywell Int'l, Inc.*, 2022 WL 17488478, at *4 (S.D. Ill. 2022) ("Here, allowing a claim for ultrahazardous/strict liability would be inconsistent with the PAA and create the possibility that Honeywell met the mandated federal standard of care, but still be held strictly liable under Illinois state law."); *Lawson v. Gen. Elec. Co.*, 140 F. Supp. 3d 968, 974 (N.D. Cal. 2015) ("Plaintiff's second and third causes of action are preempted by Price-Anderson because they are based on the theory of strict liability."); *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1187 (E.D Mo. 2013) (dismissing state strict liability claim as "the maximum permissible radiation dose levels set by federal safety standards establish the duty of care"); *Wilcox v. Homestake Mining Co.*, 401 F. Supp. 2d 1196, 1201-02 (D.N.M. 2005) ("Contrary to an action for negligence, an action for absolute or strict liability acts in the opposite of a federal safety regulation. If an action for strict liability was allowed to stand, there is a possibility that a defendant would meet the federal standard of care mandated, but still be held strictly liable under a state cause of action."); *O'Connor v. Boeing N. Am., Inc.*, 2005 WL 6035255, at *43 (C.D. Cal. 2005) ("Thus, this Court determines that strict liability is inconsistent with the Price–Anderson Act and is unavailable to Plaintiffs."); *Koller v. Pinnacle West Capital Corp.*, 2007 WL 446357, at *3 (D. Ariz. 2007) (granting motion to dismiss strict liability count); *McLandrich v. So. Cal. Edison Co.*, 942 F.Supp. 457, 465 n. 7 (S.D. Cal. 1996) (noting that "applying the 'ultrahazardous activities' doctrine here would be clearly inconsistent with the Price-Anderson Act."); *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 768 (E.D. Tenn. 2012) (dismissing state strict liability claim in class action alleging radioactive contamination).

[47] *See, e.g. Hayes v. Ne. Okla. Elec. Coop.*, 512 P.3d 1261, 1272-73 (Okla. Div. App. 2021)

handling and processing of nuclear fuel is a hazardous activity,[48] and adopting this standard would entirely supplant federal regulations.  Plaintiffs identify no recent case in which state strict liability law has been deemed consistent with federal law governing the treatment of nuclear materials for purposes of an action under the Price-Anderson Act.

There is no similar consensus against state negligence actions, however.  To the contrary, there is authority holding that "a claim of negligence should not be held inconsistent with the Act, as long as the standard of care was to be provided by the federal regulations."[49]   Unlike actions for strict liability, an action for negligence under Oklahoma law requires some deviation from the duty of due care.[50]  At this stage, Defendants have failed to show how imposing a duty of due care would be consistent with particular federal regulations, and the Court will not dismiss the Amended Complaint's assertion that Defendants are liable for violating this duty.

**D.  Plaintiffs' negligence per se claim, if amended, is not subject to dismissal.**

Defendants seek dismissal of the Amended Complaint's allegations of negligence per se, arguing that the nonspecific nature of he allegations fails to give them fair notice of the actual claims made by Plaintiffs.   In their response, Plaintiffs acknowledge that the Amended Complaint "did not explicitly indicate a statute," but contend that "reasonable inferences may be made" that the claims "refer[] to portions of the Price-Anderson Act and Oklahoma state law

---

[48] *See Yankee Atomic Elec. Co. v. United States*, 113 Fed. Cl. 323, 46 (2013) ("[N]uclear fuel storage is inherently a sensitive issue, implicating concerns of severe potential health hazards and complex technical problems.") (internal quotation, alteration, and citation omitted).

[49] *Wilcox*, 401 F. Supp. 2d at 1200 (citations omitted).

[50] *See Fargo v. Hays-Kuehn*, 352 P.3d 1223, 1227 n. 11 (Okla. 2015) (quoting *Union Transp. Co. v. Lamb*, 190 Okla. 327, 123 P.2d 660, 662 (1942) ("Negligence comprehends a failure to exercise due care as required by the circumstances of the case; a failure to do what a person of ordinary prudence would have done under the circumstances or the doing of what such a person would not have done under the circumstances.") (citations omitted)).

pertaining to radiation dose limits, ground/groundwater pollution, and air pollution." "Specifically," they argue Defendants Sequoyah Fuels and Quivira Mining "violated 10 C.F.R. § 20.105 and 20.106."

These provisions, which regulate off-site radiation exposure at nuclear facilities, were superseded in 1991 by 10 C.F.R. § 20.1301.[51]   Thus, Defendants respond by stressing that the regulations are no longer in effect, but also that they reflect simply arguments of counsel and are not a part of the Amended Complaint itself.

"Many federal courts have held that a plaintiff fails to satisfy the requirements of notice pleading for a claim of negligence per se when he does not identify which statutes the individual defendants allegedly breached."[52]   "[T]o satisfy *Iqbal* and *Twombly* by showing a plausible entitlement to relief on a claim of negligence per se," the complaint must "identify a *specific* regulation and then allege facts plausibly suggesting a violation of *that specific statute*; otherwise a right to relief on such a claim is merely possible, and not plausible."[53]   At the same time, however, some courts have held that the failure to specify a particular statute is not fatal to a claim for negligence per se, so long as it still "alleges particular conduct that clearly violates a statute or regulation."[54]   But these cases involve traffic accidents, where the complaint describes particular conduct, and the relevant statute can be readily and easily determined.[55]

---

[51] *See McGlone v. Centrus Energy Corp.*, 2020 WL 4431482, at *3 (S.D. Ohio 2020).

[52] *Welch v. Loftus*, 776 F. Supp. 2d 222, 225-26 (S.D. Miss. 2011) (citations, internal quotations, and alterations omitted).

[53] *Walker v. Massey*, 2023 WL 28435, at *5 (M.D. Tenn. 2023) (emphasis in original).

[54] *Welch*, 776 F. Supp. 2d at 226.

[55] *See id.* at 226-27 (complaint that alleged that defendant caused the accident "by failing to yield the right of way" was sufficient, as the relevant state traffic statute was easily determined easily, and thus the complaint

- 15 -

In contrast, the Amended Complaint in the present action only alleges at the most general level that the Plant generated harmful chemical releases over a period of years. The alleged safety violations are also utterly unspecific—the Amended Complaint merely gestures in the direction of negligence per se in alleging that the Plant violated "relevant Federal and Oklahoma statutes, and relevant Federal and Oklahoma environmental statutes and regulations — including the Price-Anderson Act." Such broad-brush allegations simply do not provide fair notice of the claim.[56]

The fact that 10 C.F.R. § 20.105 and 20.106 have been superseded is not fatal to Plaintiffs' claim of negligence per se. Under Oklahoma law, negligence per se may exist where a plaintiff demonstrates "(1) the violation of a statute must have caused the injury, (2) the harm sustained must be of the type intended to be prevented by the statute[,] and (3) the injured party must be one of the class intended to be protected by the statute."[57] Notably absent from this list is any requirement that the relevant statute remain continuously in force and effect up to the time of trial, and Defendants supply no authority for their argument that a subsequently-modified safety regulation cannot for the basis for a negligence per se claim for the time that it was in effect.

---

"could leave no reasonable reader at a loss to predict how [the plaintiff] would proceed with his case"); *see also Ordonez v. Ausby*, 2023 WL 310442, at *9 (W.D. Tex. 2023) (refusing to dismiss complaint which alleged particular unsafe driving conduct but without particular statutory references, where "[t]he Court was easily able to locate a provision that arguably applies to this allegation").

[56] *Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242, 1244 (D. Kan. 2002) ("In this case, plaintiff's generic complaint that defendant violated unspecified 'local, state and federal statutes, guidelines and regulations' does not provide fair notice of his claim.").

[57] *Nye v. BNSF Ry. Co.*, 428 P.3d 863, 873 (Okla. 2018)

What is potentially fatal, however, for the claim of negligence per se is the failure of the Amended Complaint to give actual and fair notices of the regulations at issue. Not only are Sections 20.105 and 20.106 unmentioned in the Amended Complaint itself, the Plaintiffs fail to allege particular conduct which would allow a reasonable person to infer which regulations are at issue. With a few exceptions, the Amended Complaint makes no reference to any particular event, focusing more generally on the alleged continuing release of "toxic substances" over a 23 year period, that is, 1970 to 1993. In fact, the Amended Complaint does not mention the terms "radiation" or "dosage." The only specific events referenced in the Amended Complaint was the January 4, 1986 "toxic chemical leak and explosion," an event that would have occurred several years after Mr. Young (who was born July 17, 1962 and who "lived in Gore for approximately the first twenty two years of his life" and received his exposure "during this timeframe") left his hometown. The Amended Complaint also alleges that, some six years later and the year before the Plant was closed, that "[a]n accident involving the release toxins [sic] occurred in 1992."

Accordingly, the Court finds that the Amended Complaint, as presently stated, fails to give fair notice of which particular health or safety regulations were violated by Defendants. At the same time, Defendants fails to explain how amendment to make clear the allegation that they violated Sections § 20.105 and 20.106 would be futile.

The Court will allow Plaintiffs to amend the Amended Complaint to specify that Defendants were negligent per se by conduct which violated these two provisions, and these two regulations only. Given the need for the matter to proceed to discovery, and because Defendants have been put to the burden of filing multiple Motions to Dismiss in an attempt to clarify Plaintiffs' claims, with the result that Plaintiffs have identified *only* these two regulations, the

Court will not grant leave for Plaintiffs to amend to add other statues or regulations in support of their negligence per se claims.

**E.  General Atomics and Sequoyah Holdings are entitled to be dismissed from the action.**

Defendants General Atomics and Sequoyah Holdings also argue that the Amended Complaint fails to provide fair notice of any specific allegations against them and fails to specify which statutes they allegedly violated to support the claim of negligence per se.  Additionally, they argue that they cannot be responsible merely because of any ownership interest in, or corporate relationship to, Sequoyah Fuels, the entity which actually operated the Plant.

Plaintiffs respond by stating that the Amended Complaint was only intended to advance claims of negligence per se against Sequoyah Fuels and Quivira Mining.  As to Defendants General Atomics and Sequoyah Holdings, they state that the Amended Complaint advances claims for negligence only.  They argue that these claims were sufficient to support an accusation that these Defendants failed to warn of the contamination at the Plant.

But the Court must take account of what is actually pled in the Amended Complaint, not the subsequent arguments of counsel.  The Amended Complaint makes very little effort at all to distinguish between the different Defendants.  For example, the Amended Complaint generally asserts:

> Defendants Quivira Mining (formerly Kerr-McGee Nuclear Corp.), Sequoyah Fuels, Sequoyah Holding Corporation, and General Atomics were engaged in the business of turning crushed uranium ore into a fine powder to be used for the manufacture of fuel rods for nuclear reactors.

And:

> Quivira Mining's (f/k/a Kerr-McGee Nuclear Corp.), Sequoyah Fuels', Sequoyah Holding Corporation's, and General Atomics' acts and omissions between approximately 1970 and 1993 caused the release of hazardous, toxic, and

- 18 -

radioactive substances into the environment in and around Gore, Oklahoma, thereby contaminating the air, soil, surface water, and groundwater in the area.

The question posed by these two Defendants, however, is entirely reasonable — how can they be responsible for Mr. Young's exposure, which had ended four years before General Atomics bought Sequoyah Fuels, the corporation which had been operating the Plant? Of course, the Complaint does allege that General Atomics (and Sequoyah Holdings, the new company it created in 1988) "owed a duty to exercise reasonable care to disclose [the release of contaminants] once [they] became aware of [it.]"

But the Amended Complaint makes no allegation that the companies were in fact aware of the release when the acquisition occurred in 1988, or indeed at any specific time thereafter. More importantly, by the time of that acquisition, Mr. Young's exposure would have ended some four years previously.

Under Oklahoma law, "a defendant owes a duty of care to the plaintiff who is foreseeably endangered by defendant's conduct with respect to all risks that make the conduct unreasonably dangerous."[58] Plaintiffs cite no authority in Oklahoma law for imposing a duty to warn of a danger created by a third party. Even if such a duty existed, the Amended Complaint does not make any plausible allegation that Mr. Young was injured by any failure to warn by these two Defendants. By the time General Atomics and Sequoyah Holdings came on the scene, the damage to Mr. Young had already been inflicted, the danger was done.

As noted earlier, Plaintiffs supply no authority for imposing a duty under Oklahoma law, or for inferring that any lack of warning caused an injury to the decedent, so there are no credible

---

[58] *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 12, 160 P.3d 959, 964 (Okla. 2007)..

grounds for believing that amendment would cure these fatal defects.  Further, because the Court finds these two Defendants should be dismissed from the action, it need not resolve Defendant Sequoyah Holding's additional argument that the claim against it is barred under the relevant Oklahoma statute of limitations.[59]

In summary, the Court dismisses all defendants from the action except Sequoyah Fuels and Quivira Mining, the entities which are plausibly alleged to have participated in the operation of the Plant.  Plaintiffs' claims of strict liability under Oklahoma law are dismissed.

To the extent Plaintiffs intend to preserve a claim of negligence per se against Sequoyah Fuels and Quivira Mining, the Court hereby authorizes Plaintiffs, within 30 days of this Order, to a Second Amended Complaint presenting claims defendants violated 10 C.F.R. § 20.105 and 20.106.

**IT IS THEREFORE ORDERED** that the Motions to Dismiss of Anadarko, Occidental and Kerr-McGee (Doc. 38), of General Atomics (Doc. 41), and of Sequoyah Holdings (Doc. 42) are hereby **GRANTED**; the Motions to Dismiss of Defendants Sequoyah Fuels (Doc. 40) and Quivira Mining (Doc. 56) are **GRANTED IN PART** and **DENIED IN PART**, as provided herein.

**IT IS SO ORDERED**.

Dated this 1st day of March, 2023.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[59] OKLA. STAT. tit. 12, § 1053.